# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM McCLUNG, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 2:11-CV-03621-RDP** |
| } | |
| **MORTGAGE ELECTRONIC** } | |
| **REGISTRATION SYSTEMS, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion to Remand (Doc. # 9), filed October 25, 2011. On November 3, 2011, Defendants Bank of America, N.A. ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Full Spectrum Lending, Inc., an entity having been merged with and into Countrywide Home Loans, Inc. ("Full Spectrum"), and The Bank of New York Mellon, as Trustee for the Certificateholders of the CWABS, Inc., Asset-backed Certificates Series 2004-5 ("BONYM") (collectively, "Defendants") filed a response to Plaintiffs' Motion to Remand. (Doc. # 13). On November 16, 2011, Plaintiffs filed their reply. (Doc. # 21). Having considered the briefs and evidentiary submissions, the court finds that the Motion to Remand is due to be denied and the Ledyard Defendants due to be dismissed for the reasons set out below.

## I.   BACKGROUND

This lawsuit involves Plaintiffs' loan ("Loan"), which is secured by the mortgage on their real property and is currently in default. The mortgage was executed to MERS as nominee for Full Spectrum Lending, Inc., was allegedly transferred to BANA, and is now owned by BONYM. This

action was originally filed in the Circuit Court of Jefferson County. Defendants removed this action to federal court, and the parties dispute whether removal was proper.

In Count One of their Complaint, Plaintiffs allege that MERS did not have authority to transfer its interest in the Loan, so none of the Defendants have the authority to foreclose on their Loan. (Doc. # 1-1 ¶¶ 6-8). In Count Two, Plaintiffs allege Defendants breached the loan agreement by refusing to modify the agreement to help Plaintiffs avoid foreclosure proceedings. (*Id*. ¶¶ 9-13). In Count Three, Plaintiffs assert that Defendants negligently serviced their mortgage. (*Id*. ¶¶ 14-15). In Count Four, Plaintiffs allege a claim for false and fraudulent representations for Defendants' servicing of their mortgage. (*Id*. ¶¶ 17-19). Plaintiffs seek permanent injunctive relief to prevent Defendants from foreclosing on their Loan and any other relief to which they are entitled. (*Id*. at 7-8). Plaintiffs also requested a temporary restraining order ("TRO") barring Defendants from foreclosing on Plaintiffs' mortgage, which the Circuit Court issued on September 13, 2011. (*Id*. at 18-19). The TRO was scheduled to expire on September 20, 2011, but on September 19, 2011, the parties agreed to and filed a Consent Agreement with the Circuit Court, committing to "maintain the status quo extending the injunctive relief pending resolution of claims and defenses asserted by the parties." (*Id*. at 19, 22-23). The Circuit Court incorporated the terms of the parties' Consent Agreement into its September 19, 2011 order. (*Id*. at 2-5).

Goodman G. Ledyard, of the law firm Pierce Ledyard, P.C. (collectively "the Ledyard Defendants"), the attorney responsible for executing the foreclosure of the Loan, sent Plaintiffs a "revised Mortgage Foreclosure Notice" on September 26, 2011 that rescheduled the foreclosure sale for October 19, 2011. (*Id*. at 45-47). In an Amendment to the Complaint on October 4, 2011, Plaintiffs alleged claims against the Ledyard Defendants. (*Id*. at 33-39). Plaintiffs asserted that the

Ledyard Defendants breached the Consent Agreement and the Circuit Court Order's incorporating the Agreement by rescheduling the foreclosure, and allege the following claims against the Ledyard Defendants: invasion of privacy (Count Five); intentional infliction of emotional distress (Count Six); and negligence and wantonness (Count Seven). (*Id*. at 35-38). Plaintiffs seek damages for emotional distress and ensuing physical afflictions such as anxiety and loss of sleep, as a result of the Ledyard Defendants' conduct. (*Id*. at 35-38).

      A.      **Defendants' Arguments for Removal**

On October 13, 2011, Defendants removed this action to federal court pursuant to 28 U.S.C. § 1441(a), asserting that this court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is met and the parties are completely diverse. (Doc. # 1 ¶ 9). To determine the amount in controversy in an action to enjoin a foreclosure, Defendants assert that courts look to the value of the object of litigation from the plaintiff's perspective, and in that respect, the courts look to the current market value of the property and the amount currently owed on the loan. (Doc. # 13 at 9-10). Defendants argue that the tax assessment and affidavit that they attached to their Opposition to Plaintiffs' Motion to Remand show that the amount in controversy is satisfied. (*Id*. at 3, Exs. 2 and 3). The affidavit of Edward Hernandez, a BANA employee, provides that Plaintiffs owe $204,525.69 on their Loan, and the tax assessment shows that in 2011, Plaintiffs' property was valued at $232,600. (Docs. # 13-2, 13-3). Therefore, Defendants argue, the value of the object of the litigation – the remaining balance on their Loan and the value of their property – exceeds the $75,000 amount in controversy.

Defendants also contend that the parties are diverse because the Ledyard Defendants were fraudulently joined and thus the court should disregard their citizenships. (Doc. # 1 ¶ 11).

Defendants present the following four arguments to establish fraudulent joinder.  First, the Ledyard Defendants are immune from tort claims involving their representation of a client absent a showing of fraud, malice, or the intent to cause harm.[1]  (Doc. # 13 at 12).  Second, Plaintiffs' three tort claims are improperly labeled and should be construed as a breach of contract claim.  (*Id*. at 14).  But, a breach of contract claim requires a demand for pecuniary damages, and because Plaintiffs seek damages only for mental and consequent physical suffering, their breach of contract claim is invalid.  (*Id*.)  Third, the Ledyard Defendants could not have violated the Consent Agreement or the Circuit Court's Order because they were not parties to the Agreement and thereby were not bound by the Agreement or the Order.  Further, even if they were bound to the Agreement and Order, the letter postponing the foreclosure sale did not violate the state court's TRO.  (*Id*. at 14-15).  Finally, Defendants argue that Plaintiffs have not pled sufficient facts with respect to their three tort claims.  (*Id*. at 16-17).

    **B.**    **Plaintiffs' Arguments in Favor of Remand and Against Removal**

As noted already, Plaintiffs filed a Motion to Remand this case to the Circuit Court pursuant to 28 U.S.C. § 1447, asserting that this court does not have diversity jurisdiction because the parties are not diverse and the amount in controversy is not satisfied.[2]  With respect to the amount in controversy, Plaintiffs argue that since they largely seek injunctive relief and have not requested a specific monetary amount of damages, Defendants cannot show that Plaintiffs' damages satisfy the $75,000 amount in controversy.  (Doc. # 9-1 at 3-5).  Plaintiffs also accuse Defendants of improperly

---

[1] Defendants note that Plaintiffs have not alleged fraud, malice, or the intent to harm, and argue that Plaintiffs' retort – that a person is liable for the torts they commit even in an agency capacity – is inapplicable when the defendant is an attorney.  (Doc. # 13 at 13).

[2] This court does not have federal question jurisdiction over this matter and neither party has argued that it does.

speculating as to the amount of Plaintiffs' damages. (*Id*. at 4). Further, Plaintiffs argue that the amount remaining on their Loan and the value of their property should not be considered in determining the amount in controversy because they "are seeking damages for the mortgagee's wrongful conduct." (Doc. # 21 at 1-2). Plaintiffs further assert that the court cannot consider the tax assessment and the affidavit provided by Defendants because when assessing the amount in controversy for removal, all evidence on the damages amount must come from Plaintiffs.[3] (Doc. # 21 at 2-3).

Plaintiffs also argue that the Ledyard Defendants were properly joined in this action, and their citizenships thwart diversity jurisdiction.[4] (Doc. # 9 at 1). They contend that they have stated plausible causes of action against the Ledyard Defendants. By representing BANA in the Consent Agreement, Plaintiffs argue that the Ledyard Defendants were bound to the Consent Agreement and the Circuit Court Order incorporating it. (Doc. # 21 at 5-6). Further, Plaintiffs insist that the Consent Agreement provides that the parties agreed to preserve the status quo of the TRO barring foreclosure, and by rescheduling the foreclosure sale, the Ledyard Defendants in fact altered the status quo. (Doc. # 21 at 4). Additionally, Plaintiffs assert that despite their status as attorneys, the Ledyard Defendants are liable for the torts they commit regardless of the capacity in which they were acting. (Doc. # 9-1 at 5-6, 10).

---

[3] Additionally, Plaintiffs contest the credibility of the tax assessment and affidavit, and argue that the affidavit should be disregarded because it is hearsay, it is not notarized, and the affiant did not state he is competent to testify to such matter. (Doc. # 21 at 2-3). The court disagrees and considers both the tax assessment and affidavit.

[4] Plaintiffs concede that but for the Ledyard Defendants, complete diversity would exist.

## II.   DISCUSSION

### A.   Amount in Controversy

A federal district court has original jurisdiction over diversity cases. 28 U.S.C. § 1332(a). Diversity jurisdiction exists when (1) the amount in controversy exceeds $75,000 and (2) the adverse parties are completely diverse. *Id*. If a plaintiff could have originally filed a claim in federal court, a defendant may remove the action from state to federal court, 28 U.S.C. § 1441(a), pursuant to the procedures for removal under 28 U.S.C. § 1446(a). The party removing the case to federal court bears the burden of demonstrating diversity jurisdiction existed at the time of removal. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-1295 (11th Cir. 2008).

Where a plaintiff does not plead a specific amount of damages, the defendant removing the case based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citations omitted). When determining whether a defendant has satisfied that burden, courts assess whether "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (citations omitted). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id*. Removing defendants may submit their own evidence, such as affidavits, to show that the jurisdictional requirements of removal are satisfied. *Id*. at 755. The court may consider evidence submitted after the case is removed, such as attachments to the defendant's opposition to remand, when evaluating whether removal is proper. *Id*. at 772-774. A removing defendant satisfies his burden when he has made "specific factual

allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id*. at 754.[5]

In an action for injunctive relief, "the amount of controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Id.* In an action for a permanent injunction against foreclosure, the best measure of the value of relief is the value of the property at issue. *See, e.g.*, *Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 3664118, at *4 (M.D. Ala. Oct. 28, 2009) (noting that the plaintiff seeking a permanent injunction against foreclosure would gain ownership, title, and possession of his home, and the measurement of these three objects is the value of the home itself); *see also*, *Mustafa v. Mkt. St. Mortg. Corp.*, — F. Supp. 2d —, 2012 WL 95375, at *3 (M.D. Ala. 2012) (noting that when a plaintiff seeks injunctive relief or questions the validity of his mortgage, he has put the value of his property in controversy); *cf. Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993) (where plaintiff seeks specific performance of a contract to purchase land, the amount in controversy is established by the value of the contract price); *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547-548 (5th Cir. 1961) ("when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy").[6] The value of the property may be established

---

[5] Plaintiffs argue that because they have not specified the amount of damages they are seeking, Defendant cannot prove the amount in controversy requirement. However, the caselaw is clear that when a plaintiff has not specified the amount of damages sought, the defendant has the burden of showing that the amount in controversy is met and may submit evidence to satisfy this burden.

[6] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

by the original loan on the property or a tax assessor's valuation of the property. *See Dottley v. Countrywide Home Loans, Inc., et al.*, No. 10-47 (N.D. Ala. July 7, 2010) (Bowdre, J.).[7]

In this matter, Plaintiffs did not plead a specific amount of damages in the Complaint. By seeking a permanent injunction against foreclosure of their property, however, Plaintiffs have placed the monetary value of the object of the litigation – their property – in controversy.[8] *See Cohen*, 204 F.3d at 1077; *Mapp*, 2009 WL 3664118, at *4. Defendants submitted an affidavit by a BANA employee declaring the remaining balance on Plaintiffs' Loan to be $204,525.69 and a tax assessment valuing the property at issue at $232,600. Using either or both of these measures, the $75,000 amount in controversy is easily satisfied. Therefore, Defendants have satisfied their burden by proving the amount in controversy by a preponderance of the evidence.

Plaintiffs argue, relying on (and as it turns out misinterpreting) *Lowery v. Alabama Power Company*, 483 F.3d 1184, 1213-1214 (11th Cir. 2007)*, that the three conditions that must be present to base removal on a document other than the initial complaint are not present in this case.[9] Plaintiffs' argument is misplaced because, as discussed in *Lowery*, there are two types of removal under 28 U.S.C. § 1446(b): (1) where an action is removable based on the initial pleading, and (2) where an action becomes removable because of a subsequent filing. *Lowery*, 483 F.3d at 1212;

---

[7] Defendants attached the *Dottley* Memorandum Opinion to their Opposition to Plaintiffs' Motion to Remand (Doc. # 13 Ex. 1).

[8] By challenging the transfer of the mortgage in a foreclosure action, a plaintiff places the ownership interest in the property at stake and has therefore "pled the whole debt into issue." *Mapp*, 2009 WL 3664118, at *4. Accordingly, even if Plaintiffs were not requesting a permanent injunction, by challenging MERS' transfer of their mortgage, they placed the entire amount of the mortgage into controversy for diversity jurisdiction purposes. *See id*.

[9] "Under the second paragraph [of § 1446(b), a case becomes removable when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." *Lowery*, 483 F. 3d at 1215 n.63.

*Pretka*, 608 F.3d at 757.[10]  The three requirements pointed to by Plaintiffs apply to cases that later become removable, *not* cases that were removable based on the initial pleading.  The latter is the case here.  Accordingly, Defendants may provide documents that did not originate from Plaintiffs to establish removal, and Plaintiffs' attempt to defeat diversity jurisdiction based on *Lowery* has fallen short.[11]  In sum, the amount in controversy is satisfied.

        B.        **Diversity of Citizenship and Fraudulent Joinder**

"[W]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329,1332 (11th Cir. 2011) (citations omitted).  The Eleventh Circuit has referred to this scenario as fraudulent joinder.  *Id*.  If the court finds that a non-diverse defendant has been fraudulently joined, the court must dismiss the defendant, and does not consider that defendant's citizenship in the diversity calculus.  *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007).

To establish fraudulent joinder in a removal case, "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident

---

[10] The *Lowery* and *Pretka* cases refer to the two types of removal, *i.e.* actions that are initially removable and those that are later removable, as removal under the first paragraph and removal under the second paragraph of § 1446(b), respectively.  However, a new version of this statute became effective on January 6, 2012 and altered the structure of this provision.  The current version provides that initially-removable actions are discussed under § 1446(b)(1), and actions that become removable after the initial pleading are discussed under § 1446(b)(3).

[11] What is more, Plaintiffs cite *James v. U.S. Bank National Association*, 2009 WL 2170045 (M.D. Ala. July 17, 2009) as evidence that a plaintiff seeking a restraining order is not suing over the entire value of the mortgage.  However, as Defendants have accurately noted, the plaintiffs in *James* did not challenge the validity of the mortgage in its entirety and sought only a temporary injunction.  *James*, 2009 WL 2170045, at *2.  The court concluded that the monetary value of temporary injunctive relief was the value of a *delay* in foreclosure.  *Id*. (emphasis added).  In contrast, Plaintiffs here seek a permanent injunction and challenge the validity of the transfer of their Loan, which places the entire value of the property into controversy.

9

defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). This is a heavy burden. *Id*. (citations omitted). "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538 (citations omitted). "[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id*. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id*. (citations omitted). That is, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Stillwell*, 663 F.3d at 1333 (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). Moreover, to defeat the accusation of fraudulent joinder, "there need only be a 'reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1542 (citations omitted). When faced with a fraudulent joinder claim and a motion to remand, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims."[12] *Crowe*, 113 F.3d at 1542.

---

[12] The fraudulent joinder standard is lower than the standard on a motion to dismiss under Federal Rule 12(b)(6). *See Stillwell*, 663 F.3d at 1333.

### 1. Plaintiffs Have Not Stated Valid Causes of Action Against the Ledyard Defendants.

#### a. Invasion of Privacy

The claim for invasion of privacy in Alabama is defined as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006) (citations and internal quotations omitted). The tort includes "four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Id.* (citations omitted). Each of these four categories in turn has distinct elements and constitutes a separate privacy interest that may be invaded.[13] *Id.*

In the Amendment to their Complaint, Plaintiffs assert that the Ledyard Defendants invaded their privacy by contacting them directly and sending the letter rescheduling the foreclosure sale, which violates the parties' Consent Agreement and Circuit Court's Order. (Doc. # 1-1 ¶¶ 6-7). Plaintiffs state that this conduct caused them "emotional distress, physical pain and suffering and injury, anxiety, worry, fear, fright, and humiliation." (*Id.* at ¶ 9). Additionally, Plaintiffs state in their Reply that they "are persons of ordinary sensibilities." (Doc. # 21 at 8). These statements are the extent to which Plaintiffs have asserted their invasion of privacy claim. They have not asserted that Defendants intentionally intruded on their private activities nor have they alleged that any

---

[13] Because Plaintiffs have not even attempted to allege that the Ledyard Defendants intruded into one of these privacy interests, the court will not list the elements for each category of invasion of privacy claims.

particular privacy interest has been intruded upon by Defendants. *See S.B.*, 959 So. 2d at 90. Similarly, Plaintiffs have not alleged that the elements of the invasion of privacy claim are satisfied nor alleged facts from which the court can infer that such conduct occurred. Considering the paucity of facts alleged by Plaintiffs on this claim, the court finds that Defendants have shown there is no possibility that Plaintiffs can establish an invasion of privacy claim against the Ledyard Defendants, and Plaintiffs have failed to defeat this showing. *See Stilwell*, 663 F.3d at 1333; *Crowe*, 113 F.3d at 1542.

### b.     Intentional Infliction of Emotional Distress

The four elements of the tort of intentional infliction of emotional distress (which is sometimes referred to as the tort of outrage) are: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's action caused the plaintiff distress; and (4) that the distress was severe." *Harris v. McDavid*, 553 So. 2d 567, 569-570 (Ala. 1989). Extreme and outrageous conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). The Supreme Court of Alabama has recognized this tort in three areas: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment." *Callens v. Jefferson Cnty. Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) (citations omitted). This tort is limited to egregious circumstances. *Id.*; *see Am. Road Serv. Co.*, 394 So.2d at 364-365 ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not extreme and outrageous); *see also Stabler v. City of Mobile*, 844 So. 2d 555, 562

(Ala. 2002) (concluding that a supervisor's unauthorized letter providing a poor reference for an employee in applying for job, which was written with the purpose to attack and criticize, was not outrageous and extreme).

Plaintiffs assert that by sending Plaintiffs the letter postponing the foreclosure sale, the Ledyard Defendants intended to inflict mental and physical anguish, among other complications, on Plaintiffs, and that Plaintiffs suffered from emotional distress and ensuing physical ailments because of the Ledyard Defendants' conduct.  Plaintiffs do not provide any further evidence or law supporting their intentional infliction of emotional distress claim.  Defendants assert that mailing the letter to Plaintiffs did not intrude into Plaintiffs' private activities, nor would it cause mental suffering to a person of ordinary sensibilities.  And, in any event, the conduct was not extreme and outrageous.  The court agrees.  Moreover, since the Alabama Supreme Court has only recognized this tort in three circumstances, none of which are present here, and has found that an aggressive letter is not extreme or outrageous conduct, the court concludes that there is no possibility Plaintiffs can state a claim for intentional infliction of emotional distress.

### c. Negligence and Wantonness

The four elements of a negligence claim are: "(1) existence of a duty on the part of the defendant; (2) a breach of that duty; (3) existence of a causal relationship between the defendant's conduct and the plaintiff's injury; and (4) a resulting injury to the plaintiff." *Chatman v. City of Prichard*, 431 So. 2d 532, 533 (Ala. 1983). "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

Proximate cause is required for both negligence and wantonness claims. *Gooden v. City of Talladega*, 966 So. 2d 232, 239 (Ala. 2007).

Plaintiffs argue that the Ledyard Defendants were negligent and wanton by communicating directly with Plaintiffs instead of their attorneys, resetting the foreclosure sale, and undertaking this conduct with the intention of causing Plaintiffs physical and mental anguish.[14] Notably, Plaintiffs have not presented any facts explaining why the Ledyard Defendants owed them a duty to not engage in this conduct. There was no attorney-client relationship, and Plaintiffs admit they were not in privity with the Leydard Defendants. As to the breach element, Plaintiffs assert that the Ledyard Defendants breached the Consent Agreement and Circuit Court's Order incorporating it. Even if the Ledyard Defendants were bound by the Consent Agreement and had duties under the Agreement, Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by contract." *Blake v. Bank of America, N.A.*, — F. Supp. 2d —, 2012 WL 607976, at *3-4 (M.D. Ala. Feb. 27, 2012); *see Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956) ("a negligent failure to perform a contract . . . is but a breach of the contract"). Additionally, even if the Ledyard Defendants were bound by the Consent Agreement, postponing the foreclosure sale was not a breach of the Agreement. *See infra* Part II.B.2. Moreover, Plaintiffs do not provide any caselaw demonstrating that they can assert a valid negligence or wantonness claim against the Ledyard Defendants for conduct performed during the representation of their client under the present

---

[14] To the extent Plaintiffs' claim can be construed as a claim for negligent or wanton mortgage servicing, the Middle District of Alabama has held, after a thorough analysis of Alabama law, that a cause of action for negligent or wanton mortgage servicing does not exist under Alabama law. *See Blake v. Bank of America, N.A.*, — F. Supp. 2d —, 2012 WL 607976, at *3-4 (M.D. Ala. Feb. 27, 2012); *Jackson v. Countrywide Home Loans, Inc.*, 2012 WL 777180, at *7 (M.D. Ala. Mar. 7, 2012). Accordingly, to the extent Plaintiffs have alleged such a claim, this claim is due to be dismissed.

circumstances.[15]  In sum, there is no evidence before the court that Plaintiffs have a possibility of stating a valid negligence or wantonness claim against the Ledyard Defendants.

> ### 2. The Ledyard Defendants' Rescheduling of the Foreclosure Sale Was Not a Breach of the Consent Agreement or the Circuit Court's Order Incorporating the Agreement.

Plaintiffs' negligence and wantonness claim, and Plaintiffs' breach of contract claim (to the extent they have asserted one), hinge on an alleged breach of the Consent Agreement and the Circuit Court's Order by the Ledyard Defendants.

The TRO enjoined Defendants from foreclosing on Plaintiffs' mortgage (Doc. # 1-1 at 18), and the Consent Agreement provides "Plaintiffs' counsel and counsel for Defendants have reached an agreement to maintain the status quo extending the injunctive relief pending resolution of claims and defenses asserted by the parties" (*Id*. at 22).  It is undisputed that the Ledyard Defendants have not foreclosed on or even attempted to foreclose on Plaintiffs' mortgage.  Plaintiffs argue that Defendants' rescheduling of the foreclosure sale altered the status quo and thereby violated the Agreement and Order.

In response, Defendants assert that first, the Ledyard Defendants were not parties to the Agreement or Order, and even if they were, they did not breach either the Agreement or Order. Defendants argue that postponing a foreclosure sale to a later date in the face of a temporary bar

---

[15] Allegations of legal malpractice against legal-service providers that arise from the execution of legal services are governed by the Alabama Legal Services Liability Act ("ALSLA").  *Fogarty v. Parker, Poe, Adams and Bernstein, L.L.P.*, 961 So. 2d 784,788 (Ala. 2006).  Parties may assert non-legal malpractice claims against attorneys who did not represent them, which are not governed by ALSLA, such as a claim for the unauthorized practice of law.  *See id.* at 791; *see also Smith v. Math*, 984 So. 2d 1179, 1188 (Ala. Civ. App. 2007) (noting that not all valid claims against attorneys are legal-malpractice claims, and a party may assert a claim against an attorney where the claim does not involve legal malpractice or a duty arising from an attorney-client relationship).  Accordingly, Plaintiffs may asserts claims against the Ledyard Defendants as long as the claims are not for legal malpractice claims and are valid claims under Alabama law.  As stated, however, Plaintiffs have not asserted valid claims against the Ledyard Defendants.

against foreclosure preserves the status quo.  Defendants cite several cases for this argument, all of which take place in the context of bankruptcy proceedings and involve the automatic stay provisions, 11 U.S.C. § 362.  *See, e.g.*, *Matter of Roach*, 660 F.2d 1316, 1319 (9th Cir. 1981).  Plaintiffs have not provided any caselaw to the contrary; rather, they have merely repeated that setting a date for a foreclosure sale operated to change the status quo.  The court is persuaded that merely postponing and rescheduling the date of a foreclosure sale maintains the status quo in the face of a bar against foreclosure.  This is particularly the case in the non-bankruptcy context where, such as here, a mortgage holder temporarily barred from foreclosing on the mortgage sends a notice postponing the foreclosure sale.  Further, by postponing the date of the foreclosure sale and never actually conducting the sale, the Ledyard Defendants never affected any of Plaintiffs' rights or violated the injunction barring them from conducting a foreclosure sale.  Accordingly, the Ledyard Defendants did not breach the Consent Agreement or the Circuit Court's Order incorporating it, and there is no possibility that any of Plaintiffs' claims relying on these alleged breaches are valid.

### 3. Plaintiffs Have Not Asserted a Valid Breach of Contract Claim Against the Ledyard Defendants.

Defendants contend that Plaintiffs' three claims against the Ledyard Defendants are more properly construed as a breach of contract claim.  To the extent Plaintiffs' claims are veiled contract claims, Defendant asserts that because a valid contract claim must assert monetary damages, and as Plaintiffs only allege emotional distress and ensuing physical suffering, Plaintiffs' claims must be dismissed.

In general, a party asserting a breach of contract claim under Alabama law cannot recover for damages from mental anguish.  *Sanford v. W. Life Ins. Co.*, 368 So. 2d 260, 264 (Ala. 1979).

There are exceptions to this rule, such as "where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering . . . ." *Id*. (citations omitted). Alabama law prohibits recovery for "personal injury, inconvenience, annoyance or mental anguish and suffering" in an action for breach of an insurance contract. *Vincent v. Blue Cross-Blue Shield, Inc.*, 373 So.2d 1054, 1056 (Ala. 1979). Most of the cases in which a plaintiff alleging breach of contract has recovered damages for mental anguish involved contract claims for the repair or construction of a house where the breach affected habitability. *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1359 (11th Cir. 2000) (listing examples of exceptional cases).

The court is not aware of any cases in which a plaintiff was allowed to recover damages for mental anguish and consequent physical suffering for a breach of contract claim in a foreclosure action, nor have Plaintiffs provided the court with such a case. Moreover, Plaintiffs have not provided any evidence suggesting (or arguing) that this is an exceptional breach of contract case where damages for mental anguish are warranted. To the extent Plaintiffs have alleged a breach of contract claim, Defendants have met their burden in showing there is no possibility on the facts presented that Plaintiffs can succeed on this claim, and the court concludes that Plaintiffs have not stated a valid breach of contract claim.

### 4. The Ledyard Defendants Are Not Privileged Against Tort Claims Asserted by Plaintiffs.

The court has already concluded that Plaintiffs' Amended Complaint does not state any valid causes of action against the Ledyard Defendants, requiring dismissal of the Ledyard Defendants.

Nevertheless, the court addresses Defendants' argument that the Ledyard Defendants are immune from suit against Plaintiffs for the sake of thoroughness.

Alabama law disfavors suits against attorneys for conduct arising from the representation of their clients, and to be sure, several courts have refused to allow cases to proceed that were filed against the opposing party's attorneys.[16]  *See Birmingham News Co., Inc. v. Chamblee and Harris*, 617 So. 2d 689, 691 (Ala. Civ. App. 1993) (declining to extend liability for attorneys for agreements they executed for their clients against claims by non-clients).  Nevertheless, there is no hard and fast rule in Alabama that plaintiffs cannot allege tort claims against another party's attorney for his conduct while representing that party.  In fact, the Alabama Supreme Court held that parties may assert claims against attorneys who did not represent them as long as the claims were valid causes of actions.  *See Fogarty*, 961 So. 2d at 788.

Defendants argue that the Ledyard Defendants are immune from suit against Plaintiffs for conduct arising from the representation of their clients, absent a showing of fraud, malice, or intent to cause harm.  Defendants primarily rely on *Patterson v. Powell, Goldstein, Frazer & Murphy, LLP*, 332 B.R. 450, 453 (N.D. Ala. 2005), for the proposition that attorneys are not liable under Alabama law for conduct arising from their representation of their clients.  Although *Patterson* is a favorable case for Defendants, it does not stand for the proposition argued by Defendants.  In *Patterson*, the plaintiff sued the defendant, a law firm who advised the plaintiff's employer to fire plaintiff, for tortious interference with contract and conspiracy to commit this unlawful interference.

---

[16] Plaintiffs provide caselaw stating that a party is liable for their own torts, regardless of whether they acted in an agency capacity. (Doc. # 9-1 at 10).  The court agrees with this statement of law.  If the Ledyard Defendants had committed a tort against Plaintiffs, they would be liable for such conduct, even if they were representing Plaintiffs at the time the tort was committed.  At this juncture, however, Plaintiffs have not demonstrated that the Ledyard Defendants have committed a tort; instead, they are attempting to impute BANA's obligations under the Consent Agreement to its attorneys, the Ledyard Defendants, and have thus asserted baseless claims against the Ledyard Defendants.

*Id*. at 452. The plaintiff argued that the defendant acted outside the scope of its contract with the plaintiff's employer, to which the plaintiff was not a party. The court held that the defendant did not owe the plaintiff a duty arising out of the contract, and cited policy reasons for prohibiting a third party from suing an attorney who advised his client to act unfavorably towards the third party. *Id*. at 453. The court affirmed the bankruptcy court's dismissal of the plaintiff's tort claim against the defendant because the plaintiff had failed to allege a valid cause of action, *not* because attorneys are immune from all claims against non-clients. *See id*. at 453-454. In sum, even in light of the holding in *Patterson*, Plaintiffs are not prohibited from asserting *any and all* claims against the Ledyard Defendants for their conduct while representing their client in opposition to Plaintiffs.

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Remand (Doc. # 9) is due to be denied and the Ledyard Defendants are due to be dismissed from this case. The court will issue a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this     27th     day of March, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE