**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM McCLUNG, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-CV-03621-RDP** |
| | } | |
| **MORTGAGE ELECTRONIC** | } | |
| **REGISTRATION SYSTEMS, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on the Motion to Dismiss (Doc. # 12), filed on November 3, 2011 by Bank of America, N.A. ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Full Spectrum Lending, Inc., an entity having been merged with and into Countrywide Home Loans, Inc. ("Full Spectrum"), and The Bank of New York Mellon, as Trustee for the Certificateholders of the CWABS, Inc., Asset-backed Certificates Series 2004-5 ("BONYM") (collectively, "Defendants").  Plaintiffs filed a Response (Doc. # 20) on November 15, 2011, and Defendants filed a reply (Doc. # 26) on November 30, 2011.  Having considered the briefs and evidentiary submissions, the court finds that the Motion to Dismiss is due to be granted for the reasons set out below.

**I.      BACKGROUND**

This lawsuit involves Plaintiffs' loan ("Loan"), which is secured by the mortgage on their real property located at 1756 Russet Hill Circle, Birmingham, AL 35244.  On April 21, 2004, Plaintiffs, a married couple, executed a mortgage to MERS, acting solely as nominee for Full

Spectrum.  (Doc. # 1-1 ¶ 7).  Plaintiffs' Loan is currently in default and subject to foreclosure, though a foreclosure sale has not yet occurred.

Plaintiffs filed their Complaint (Doc. # 1-1) in the Circuit Court of Jefferson County on September 13, 2011.  Plaintiffs' Complaint[1] fails to coherently recount the facts of the case, clarify what facts support which claims, and identify which Defendant performed what conduct.  Each of Plaintiffs' Counts for relief contains a list of factual assertions, which the court will discuss in further detail when discussing each Count individually in Part III of this memorandum opinion.  In an affidavit attached to their Complaint, Plaintiffs explain that they were dealing with financial hardship due to medical problems and unemployment, and asked Defendants about alternative payment options for their mortgage payments.  (Doc. # 1-1 at 14).  Defendants told them they would be eligible for a loan modification if their Loan was in default for at least 90 days; however, Plaintiffs also received conflicting information from Defendants about modifying their Loan.  (*Id.*)  At one point, Defendants mentioned some sort of "Code" on Plaintiffs' account preventing them from being eligible for loan modification but refused to provide any further explanation concerning this Code. (*Id.*)

Turning to Plaintiffs' claims, in Count One, Plaintiffs allege that MERS did not have authority to transfer its interest in the Loan, so any purported transfer of interest to BANA or BONYM was invalid and MERS is the only Defendant with authority to foreclose on the Loan.  (*Id.* ¶¶ 6-8).  In Count Two, Plaintiffs allege Defendants breached the Mortgage Contract in several ways,

---

[1] Throughout their Complaint, Plaintiffs accuse Defendants of alleged misconduct towards themselves and borrowers in general.  To be clear, this lawsuit involves only Plaintiffs' claims against Defendants.  To the extent Plaintiffs seek redress on behalf of borrowers in general, this is not the appropriate action in which to do so, and the court therefore will not consider Plaintiffs' claims on behalf of all borrowers.

such as "failing to comply with applicable loan servicing requirements prior to the alleged foreclosure" by refusing to help Plaintiffs avoid foreclosure proceedings and modify the agreement. (*Id.* ¶¶ 9-13). In Count Three, Plaintiffs assert that Defendants negligently, wantonly, and carelessly serviced their mortgage. (*Id.* ¶¶ 14-15). Finally, in Count Four, Plaintiffs assert a claim for false and fraudulent representations against Defendants. (*Id.* ¶¶ 17-19). Plaintiffs seek a preliminary and permanent injunction against Defendants from foreclosing on their mortgage and any other relief the court finds just and proper. (*Id.* at 8).

After the Jefferson County Circuit Court granted Plaintiffs' request for a temporary restraining order preventing Defendants from foreclosing on Plaintiffs' mortgage (*Id.* at 16-19), the parties entered into a Consent Agreement, where they agreed to an injunction against foreclosure until resolution of the parties' claims. (*Id.* at 22-23). The state court incorporated the terms of the Consent Agreement into its September 19, 2011 order. (*Id.* at 25). On October 25, 2011, Plaintiffs filed a Motion to Remand this case to state court (Doc. # 9), and on March 27, 2012, the court issued an order denying Plaintiffs' Motion to Remand (Doc. # 30).[2]

This court is now faced with Defendants' Motion to Dismiss Plaintiffs' Complaint, where Defendants argue that Plaintiffs' Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 12 at 1). Defendants attached the Mortgage Contract[3] (which Plaintiffs

_____

[2] Before this case was removed to this court, Plaintiffs filed an Amendment to their Complaint, where they asserted claims against Goodman G. Ledyard of the law firm Pierce Ledyard, P.C. (collectively "the Ledyard Defendants"). In the court's March 27, 2012 Memorandum Opinion on Plaintiffs' Motion to Remand (Doc. # 29), the court determined that the Ledyard Defendants were fraudulently joined and consequently dismissed them and Plaintiffs' Amended Complaint from this action, (Doc. # 30).

[3] Generally, on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). The Eleventh Circuit has articulated a qualification to this rule that applies, as it does here, when certain documents and their contents are undisputed. *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d

failed to submit to the court) to their Motion to Dismiss. (Doc. # 12 Ex. C). The Mortgage Contract provides that MERS "has the right . . . to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (Doc. # 12 Ex. C).

Defendants contend that MERS' transfer of its interest to BONYM was valid, and that the Mortgage Contract granted MERS broad rights to transfer its interests. Further, Defendants argue that they did not have an obligation to reduce Plaintiffs' loan payments or to consider Plaintiffs' request for a loan modification. Defendants contend that all of the duties Plaintiffs assert that they breached were not part of the Mortgage Contract and thus did not bind Defendants. Finally, Defendants argue that Plaintiffs have not alleged sufficient facts to support their fraudulent misrepresentation claim.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet

---

1371, 1379 (11th Cir. 2010). "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged," *i.e.* it is undisputed. *Id.* (citations omitted); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is properly considered, provided that its contents are not in dispute.") Plaintiffs' claims revolve around their Mortgage Contract, and Plaintiffs reference the Mortgage Contract many times throughout their Complaint and Response. Further, Plaintiffs have not disputed the authenticity of the Mortgage Contract submitted by Defendants. Accordingly, the court concludes that the Mortgage Contract is central to Plaintiffs' claims and that its authenticity is not disputed. Therefore, the court properly considers the Mortgage Contract that Defendants attached to their Motion to Dismiss.

Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* The Court has also instructed that application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial

5

experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the district court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

## III.   ANALYSIS

### A.   Count One: Failure of Ownership of Note and Mortgage

The gist of Plaintiffs' allegation is that MERS, as the mortgagee, never had the authority to transfer any of its interests under the Mortgage Contract. Plaintiffs allege that although BANA purportedly purchased the mortgage and BONYM purports to currently own the mortgage, any assignment of the mortgage is invalid, so neither BANA nor BONYM have the right to foreclose on Plaintiff's mortgage. (Doc. # 1-1 ¶¶ 6-8). In their Motion to Dismiss, Defendants assert that courts in Alabama consistently reject the type of challenge raised by Plaintiffs to MERS' authority to transfer title, and hold that MERS can assign its interests in loan agreements. Moreover, Defendants contend that although technically Plaintiffs' Count One actually asserts a claim for wrongful foreclosure, Alabama law prohibits wrongful foreclosure claims prior to a foreclosure sale; therefore, Plaintiffs cannot support a claim for wrongful foreclosure here.[4]

---

[4] Defendants also argue that the maxim "He who seeks equity must do equity" prohibits borrowers from challenging foreclosure proceedings without tendering the amount due on their loan, and because Plaintiffs have not offered to do so, their request to enjoin foreclosure proceedings must fail. The court acknowledges that the Alabama Supreme Court has endorsed this maxim, s*ee, e.g., Coburn v. Coke*, 69 So. 574, 575 (Ala. 1915); *see also Holman v. Holman*, 612 So. 2d 492, 493 (Ala. Civ. App. 1992) (this maxim is also known as the "clean hands" doctrine, and is a "a matter left particularly to the discretion of the trial court"), and has applied this maxim to require that a request to enjoin a foreclosure may be granted if the party seeking to enjoin the sale makes an "offer to do equity and to pay whatever amount is found by the court to be in arrears and to perform such other obligations as are necessary to keep the mortgage from foreclosure," *Marsh v. Wayland*, 266 Ala. 402, 405 (Ala. 1957). Although the court acknowledges Defendants' assertion that Plaintiffs have unclean hands because they are in default of their Loan, Defendants have failed to establish that Plaintiffs' default is sufficient to preclude Plaintiffs from seeking an injunction against foreclosure under all theories. Therefore, the court declines to conclude that Count One is due to be dismissed on these grounds alone. In any event, the court notes that Plaintiffs' offers to "do equity" appear insincere. If they were truly willing to pay their debt—and for that matter, were financially able to do so—it is readily apparent that they would not be pursuing this lawsuit.

Analyzing the same contractual language in a separate mortgage agreement, the Honorable Abdul Kallon has noted that MERS has the authority under Alabama law to assign its interests to another entity. *Scivally, et al., v. CitiMortgage, Inc. et al.*, No. 11 Civ. 1452, at 5 (N.D. Ala. Sept. 12, 2011)[5]; *see Crum v. LaSalle Bank, N.A.*, 55 So. 3d 266 (Ala. Civ. App. 2009).[6]  The mortgage agreements at issue in *Crum*, the leading Alabama case on this question, and *Scivally*, wherein Judge Kallon of this court followed *Crum*, contained the following language:

> Borrower irrevocably mortgages, grants, and conveys to MERS (solely as nominee for Lender and Lender's successor and assigns) and to the successor and assigns of MERS,  with power of sale, the . . . property . . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Crum*, 55 So. 3d at 267-268; (Doc. # 12 Ex. A at 6).  Additionally, the mortgage language in *Crum* expressly provided that the note and mortgage could be sold without notice to the borrower.  *Id*. at 268.  In *Crum*, the borrower argued that because the mortgage designated MERS as the lender's nominee and the mortgagee, MERS could not convey any rights in the mortgage to another party. *Crum*, 55 So. 3d at 268.  However, in making that argument, the *Crum* borrower ignored the fact that the contract granted MERS "any or all of [the lender's] interests" in the mortgaged property and the

---

[5] Defendants attached *Scivally* as Exhibit A to their Motion to Dismiss.  (Doc. # 12 Ex. A).

[6] *Crum* is binding on this court.  *See Bravo v. U.S.*, 577 F.3d 1324, 1326 (11th Cir. 2009) (on an issue of state law, when there is no decision from the highest court of the state on point, the Eleventh Circuit is bound to follow the intermediate state appellate court "unless there is persuasive evidence that the highest state court would rule otherwise") (citations omitted).

right "to take any action required of" the lender.  *Id*. at 269.  The court in *Crum* concluded that by the terms of the mortgage agreement, "MERS was authorized to perform any act on the lender's behalf as to the property, including selling the note and the mortgage to a third party . . . ."  *Crum*, 55 So. 3d at 269.  Further, in *Scivally*, where the court faced the same allegation (that MERS' transfer of interest was invalid) in the context of the same contractual language, Judge Kallon held that "any allegation that is rooted in the notion that MERS' assignment [of its interests in the mortgage] was illegal cannot form the basis for a cognizable claim under Alabama law and must be dismissed with prejudice."[7]  *Scivally*, at 7.

The language quoted by the *Crum* court that unequivocally granted MERS, as nominee for the lender and mortgagee, the right to transfer its interests under the mortgage agreement, is also found in the Mortgage Contract in this action.  (*See* Doc. # 12 Ex. C); *Crum*, 55 So. 3d at 267-268.  In accordance with Alabama law, the court concludes that this language in the Mortgage Contract authorizes MERS to validly transfer its interests.  *See id*.  Further, under the Mortgage Contract, an assignee, such as BANA, is permitted to transfer its interests to another assignee, such as BONYM.[8]  *See id*.  Therefore, Plaintiffs have no basis on which to assert a claim that MERS' assignment of its

---

[7] Plaintiffs argue that the *Scivally* decision does not preclude their claim that MERS' assignment of its interests was invalid because in *Scivally*, the claim alleging MERS' transfer of interest was invalid was dismissed by the court because the claim contained "naked assertions."  (Doc. # 20 at 10).  However, in the *Scivally* case, Judge Kallon set out two alternative reasons for dismissing that claim: (1) the lack of anything besides "naked assertions" in the complaint; and (2) the express contractual language permitted MERS to transfers its interest.  (Doc. # 12 Ex. A at 5).

[8] It is unclear whether MERS transferred its interests to BANA before BONYM acquired its interests under the mortgage.  Plaintiffs state that BANA *may* have gained MERS' interests under the mortgage at some point, and Defendants only state that MERS assigned its interests to BONYM.  (*See* Doc. # 12 Ex. E).  The court expresses no opinion on what transfers of interests occurred in this action.  The court merely concludes that the Mortgage Contract permits an assignee to transfer its interests and that  in light of the contractual language at issue in this action, Alabama law does not recognize Plaintiffs' claim that MERS' assignment of its interests under the Mortgage Contract was invalid.

interest and the subsequent assignment of this interest are invalid under Alabama law.[9]  *See Scivally*, at 7.  Count One is due to be dismissed with prejudice.

To the extent Plaintiffs have actually asserted a wrongful foreclosure claim in Count One, the court agrees with Defendants' assertion that Plaintiffs have failed to state a plausible wrongful foreclosure claim.  Under Alabama law, a "mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor."  *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan*, 607 So. 2d 180, 182 (Ala. 1992).  To state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place; merely scheduling a foreclosure sale is not sufficient.  *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007).  Here, Plaintiffs have not alleged that a foreclosure sale has taken place, but have merely asserted that Defendants scheduled such a sale.  Accordingly, to the extent Count One is a veiled wrongful foreclosure claim, that count must also be dismissed for the alternative reason that Plaintiffs have failed to set forth a plausible wrongful foreclosure claim.

---

[9] The court has considered the cases submitted by both parties from other jurisdictions, but notes that Alabama law governs this claim, so the court follows *Crum*, which is binding on this court, and *Scivally*, which the court finds persuasive.  Some of the cases submitted by Defendants that do not contain Alabama law but involve MERS, such as the *Cervantes v. Countrywide Home Loans, Inc.* case from the Ninth Circuit, are also persuasive.  *See* 656 F.3d 1034 (9th Cir. 2011).  The *Cervantes* decision contains an extensive discussion of how MERS operates and involves a mortgage contract with substantially similar language, if not identical, to the contractual language at issue in this action. *See Cervantes*, 656 F.3d at 1042.  The Ninth Circuit determined that this language unequivocally granted MERS the right to foreclose on and sell its interests in the mortgage, and plaintiffs failed to raise a plausible wrongful foreclosure claim by arguing that MERS' transfers of its interest were invalid.  *Id*. at 1042-1044.  The *Cervantes* court's interpretation of the mortgage language is similar to that in *Crum* (and the *Cervantes* court was examining substantially similar contract language).  On the other hand, this court does not find the case submitted by Plaintiffs from the Circuit Court of Russell County, Alabama, *Horace v. LaSalle Bank National Association*, to be relevant or persuasive to this action.  That case involves New York law and a dispute over a mortgage contract with language that is not at all similar to the contract language in this action; further, the court's two-page order does not contain any legal analysis.  (*See* Doc. # 20 Ex. 1).

**B.      Count Two: Breach of Contract**

Plaintiffs next allege that Defendants breached the Mortgage Contract by "failing to comply with applicable loan servicing requirements prior to the alleged foreclosure concerning forbearance, workouts, modifications, debt forgiveness," and other methods that would have helped Plaintiffs avoid foreclosure. (Doc. # 1-1 ¶ 10). Further, they assert that Defendants "failed to comply with requirements of loss mitigation and foreclosure prevention single family loan servicing guidelines, special default loan servicing requirements and standards, and special foreclosure prevention workout programs" which require the loan servicer to find out why the borrower is having difficulty making payments and provide the borrower with alternative, attainable methods of resolving his debt. (*Id.* ¶ 11). Plaintiffs also allege that Defendants informed them that to be eligible for a loan modification, they had to be delinquent on their loan payments for ninety days. (*Id.*) But Defendants allegedly also provided Plaintiffs with conflicting information about their applications for a loan modification. (*Id.*) Additionally, Plaintiffs assert that they acted in good faith in attempting to "work out a plan with Defendants," and that Defendants "breached the duty of good faith and fair dealing . . . an express, implied, and oral agreement . . . ." (*Id.* ¶¶ 11-12).

The factual assertions on which Plaintiffs base their allegation that Defendants breached their duty of good faith and fair dealing and an implied agreement with Plaintiffs are as follows: (a) Defendants provided contradictory statements regarding the status of Plaintiffs' application for a modification of their Loan; (b) Defendants provided "contradictory and incorrect rationales" for denying Plaintiffs' loan modification applications; (c) Defendants prevented Plaintiffs from speaking to the same representative over the telephone by moving employees out of the modification

10

department; (d) Defendants ignored Plaintiffs' inquiries about their modification request; and (e) Defendants repeatedly asked Plaintiffs to provide the same information.  (*Id.*)

The elements of a breach of contract claim under Alabama law are (1) "the existence of a valid contract binding the parties in the action, (2) the plaintiff's own performance under the contract, (3) the defendant's nonperformance, and (4) damages."  *Poole v. Prince*, 61 So. 3d 258, 274 (Ala. 2010) (internal quotations omitted).  The Alabama Statute of Frauds provides that an "agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000" must be evidenced by a writing or it is void.  Ala. Code. § 8-9-2(7).  Under § 8-9-2(7), a writing memorializing a delay to payment under a previous agreement must "state the full terms of the agreement to forbear, the mutuality of the agreement, and the intention of the parties."  *DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005); *see also Blake v. Bank of America, N.A.*,—F.Supp.2d—, 2012 WL 607976, at *4-5 (M.D. Ala. Feb. 27, 2012) (holding plaintiff's allegations — that the mortgage company providing her with loan modification services submitted loan modification paperwork on her behalf to her lender, that the lender notified her in writing of its ongoing negotiations with the mortgage company regarding the loan modification, and that she learned that her loan would be refinanced — were sufficient for the court to reasonably infer that the parties memorialized the loan modification agreement in writing and to deny the motion to dismiss based on an invalid contract under the Statute of Frauds); *Mortensen v. MERS*, 2010 WL 5376332, at *6 (S.D. Ala. Dec. 23, 2010) (finding that an alleged agreement to modify a mortgage loan must comply with the Statute of Frauds).

Further, "[w]here a contract fails to specify all the duties and obligations intended to be assumed, the law will imply an agreement to do those things that according to reason and justice the parties should do in order to carry out the purpose for which the contract was made." *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002) (citations omitted). "There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; . . . in every contract there exists an implied covenant of good faith and fair dealing." *Id.* (internal quotations omitted). However, this obligation does not "supply a term that adds something new or different to the rights and obligations to which the parties have expressly agreed or to vary clear contract terms." *Ballard v. Lee*, 671 So. 2d 1368, 1378 (Ala. 1995), *overruled on other grounds by State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998); *see Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992) (bad faith conduct is only actionable if there has been an "identifiable breach in the performance of specific terms of the contract").

Although there is no dispute between the parties that there is a valid Mortgage Contract binding Plaintiffs that is (or was) binding on most, if not all, of the Defendants,[10] it is not clear that the Contract imposed the specific duties on Defendants as alleged by Plaintiffs. Plaintiffs have not established that the Mortgage Contract required Defendants to assist Plaintiffs in avoiding foreclosure or provide Plaintiffs the opportunity to modify their loan payments. Notably, Plaintiffs have not even attempted to show what language in the Mortgage Contract creates these duties. In

---

[10] It is not clear whether BANA had any interests in the mortgage. Neither party has submitted any evidence of BANA's interests nor provided any concrete details on its purported interests.

fact, Plaintiffs have not even provided the court with a copy of the Mortgage Contract. A careful review of the Mortgage Contract shows that Defendants had no such duties. (*See* Doc. # 12 Ex. C). Accordingly, the court cannot reasonably infer that the agreement as described by Plaintiffs exists, so Plaintiffs' breach of the Mortgage Contract claim is due to be dismissed.

Moreover, Plaintiffs have not submitted any evidence or asserted any further details concerning their allegation that Defendants promised them that they could modify their loan payments after being in default for ninety days. Without written evidence of Defendants' alleged promise to allow Plaintiffs to modify their loan, any agreement to do so is void. *See DeVenney*, 918 So. 2d at 115; Ala. Code § 8-9-2(7). Accordingly, the court must dismiss any of Plaintiffs' claims relying on Defendants' alleged promise to modify Plaintiffs' Loan because such an agreement must have been memorialized in writing under the Statue of Frauds. *See Blake*, 2012 WL 607976, at *4-5.

In addition, Plaintiffs accuse Defendants of breaching an implied duty to consider or execute Plaintiffs' request for a loan modification. However, the implied duty of good faith and fair dealing only requires that Defendants act to carry out the terms of an existing contract in good faith. *See Lloyd Noland Found.*, 837 So. 2d 267. This duty cannot be construed to add new obligations to Defendants under the Mortgage Contract. *See Ballard*, 671 So. 2d at 1378. Plaintiffs have not presented sufficient factual evidence for the court to reasonably infer that the Mortgage Contract, or some unidentified amendment to the Contract, imposed a duty on Defendants to consider or grant Plaintiffs' request for a loan modification. Further, a review of the Mortgage Contract does not indicate that Defendants had such a duty. *(See* Doc. # 12 Ex. C). Accordingly, since Plaintiffs appear to be alleging a breach of a duty that does not exist under the terms of the Mortgage Contract, Plaintiffs' claims alleging a breach of an implied covenant and/or the duty of good faith and fair

dealing to work with Plaintiffs to modify their loan payments are due to be dismissed.  Moreover, even if Defendants had such duties under the Mortgage Contract, Plaintiffs have not provided sufficient factual support for the court to reasonably infer that a breach of these duties occurred.

In addition to Plaintiffs' allegations in their Complaint, Plaintiffs appear to allege new claims and facts in their Response to Defendants' Motion to Dismiss.  That is, in their Response, Plaintiffs assert that on April 17, 2009, BANA "signed a contract with the U.S. Treasury Department, agreeing to comply with the HAMP requirements and to perform loan modification and other foreclosure prevention services described in the program guidelines," and that Defendants violated the HAMP directives in their dealings with Plaintiffs.[11]  (Doc. # 20 at 12-13).  Plaintiffs additionally assert that BANA is party to the Servicer Participation Agreement ("SPA"), to which Plaintiffs are third-party beneficiaries, and by failing to allow Plaintiffs to modify their loan agreement, Defendants breached their SPA contractual duties to Plaintiffs.[12]  (*Id.* at 13).

First, while evaluating Defendants' Motion to Dismiss, the court is constrained by the claims alleged in Plaintiffs' Complaint.  The Complaint does not contain any assertions that Defendants owed duties to Plaintiffs under the HAMP and the SPA; therefore, the court cannot consider claims

---

[11] HAMP, which stands for the Home Affordable Modification Program, was authorized by Congress as part of the Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5219a(a), and designed to incentivize mortgage servicers to allow loan modifications and help borrowers avoid foreclosure.  *Hall v. Wells Fargo Bank, N.A.*, 2011 WL 4345190, at *1 (M.D. Ga. Sept. 15, 2011).  HAMP imposes obligations on participating mortgage servicers, who sign SPAs and agree to consider all loan modification requests.  *In re Newell*, 2012 WL 909200, at *1 (Bankr. S.D. Fla. 2012 Mar. 15, 2012).

[12] Under the Emergency Economic Stabilization Act, the Secretary of the Treasury was granted authority to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures."  *Wigod v. Wells Fargo Bank, N.A.*, — F.3d —, 2012 WL 727646, at *2 (7th Cir. Mar. 7, 2012); § 5219a(a).  Pursuant to this authority, the Secretary entered into SPAs with home loan servicers to induce the servicers to modify loan payments of borrowers having financial difficulties who were eligible under the program for loan modifications, pursuant to Treasury guidelines and procedures.  *Wigod v. Wells Fargo Bank, N.A.*, — F.3d —, 2012 WL 727646, at *2 (7th Cir. Mar. 7, 2012).

raised by Plaintiffs for the first time in their Response.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (on a motion to dismiss, the court is "limited to the four corners of the complaint"[13] and may refuse to consider agreements not discussed in the complaint and referred to for the first time in the response to a motion to dismiss); *see, e.g., Lewis v. State Farm Fire and Cas. Co.*, 2011 WL 1642313, at *6 n.9 (S.D. Ala. Apr. 13, 2011) (a plaintiff cannot assert new causes of action in a response to a motion to dismiss).[14]  Accordingly, these claims that were asserted for the first time in their Response are not properly before the court.  Further, even if the court could evaluate Plaintiffs' new claims, the court notes that Plaintiffs have not submitted any evidence of a contract binding Defendants to the HAMP directives or those of the SPA.  Finally, even if these claims were properly before the court, Plaintiffs have not pled sufficient factual content for these claims to survive a Rule 12(b)(6) motion to dismiss.[15]

---

[13] Of course, as discussed in footnote 3, the rule that review on a motion to dismiss is "limited to the four corners of the complaint" is relaxed when an extrinsic document that is central to the plaintiff's claim and undisputed is presented outside the pleadings.  *See supra* note 3; *Speaker*, 623 F.3d at 1379.  However, that is not the issue here; Plaintiffs have not presented an extrinsic document and raise completely new allegations in their Response that were never referred to in their Complaint and are vehemently challenged by Defendants.

[14] Although Plaintiffs preface their new claims with the caveat that they "are making no federal claims herein," they thereafter proceed to accuse Defendants of breaching their duties to Plaintiffs under the SPA and the HAMP.  Thus, the court has no choice but to construe these allegations as making new claims.

[15] If the court were to entertain Plaintiffs' claims that Defendants owed them a duty under the HAMP and a SPA, the court notes that the Eleventh Circuit has held in an unpublished opinion that the HAMP does not provide borrowers with a private cause of action, *Nelson v. Bank of America, N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011), and that Defendants have provided caselaw demonstrating that federal courts throughout the country have determined that borrowers are not third-party beneficiaries to (and have no cause of action under) SPAs. *See, e.g.*, *Phipps v. Wells Fargo Bank, N.A.*, 2011 WL 302803, at *8 (E.D. Cal. Jan. 27, 2011).  Notably, Plaintiffs have failed to provide any caselaw demonstrating that borrowers have third-party beneficiary status under these two agreements and submit nothing more than conclusory assertions for their argument that mortgage holders owe borrowers certain duties under these agreements.  Accordingly, Plaintiffs cannot assert a claim under the HAMP, and it seems unlikely that Plaintiffs could assert a claim under the SPA.

C.     **Count Three: Negligence, Carelessness, and Wantonness**

Plaintiffs next assert Defendants told them to default on their Loan for ninety days to qualify

for a loan modification, made it impossible for them to speak with the same person about their loan

more than once, and failed to maintain their financial information on their account.  (Doc. # 1-1 ¶

15).  Consequently, Plaintiffs allege, Defendants caused Plaintiffs to default on their Loan.  (*Id.*)

Plaintiffs contend that Defendants' mishandling of their Loan and modification applications

amounted to negligent, careless,[16] and wanton servicing of their Loan.  (*Id.*)

In *Blake*, the Middle District of Alabama was charged with determining whether Alabama

law supports a cause of action for negligent or wanton mortgage servicing asserted by a borrower

against a mortgage servicer.  *Blake*, 2012 WL 607976, at *3.  At the time *Blake* was decided, as far

as the court can tell, no Alabama state court had addressed a claim for negligent or wanton mortgage

servicing.  The *Blake* court noted that "Alabama law does not recognize a tort-like cause of action

for the breach of a duty created by contract."  *Id.*  "[A] negligent failure to perform a contract . . . is

but a breach of the contract."  *Id.* (quoting *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala.

1956)); *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled on*

*other grounds by White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009) ("a mere failure

to perform a contractual obligation is not a tort"); *Vision Bank v. 145, LLC*, 2011 WL 5289070, at

*13 (S.D. Ala. Nov. 4, 2011) (a party's relabeling of "a claim for failure to perform a promise based

on the contractual terms of the Loan Agreement," which is in reality a breach of contract claim, does

---

[16] A claim for carelessness does not appear to exist under Alabama law, and Plaintiffs have not provided any caselaw to the contrary.  The Supreme Court of Alabama has held that the term carelessness may be used to define negligence.  *See Salotti v. Seaboard Coast Line R. Co.*, 299 So. 2d 695, 707-711 (Ala. 1974).  Accordingly, the court construes Plaintiffs' allegations of Defendants' "carelessness" as part and parcel of their negligence claim.

not render the claim an independent tort).  A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages.  *Blake*, 2012 WL 607976, at *3 (quoting *Vines*, 85 So. 2d at 440).

The court in *Blake* determined that the mortgage servicer's obligations arose from the mortgage and promissory note to which the parties agreed, not from the duty of reasonable care generally owed to members of the public.  *Id*.  Accordingly, the borrower could not allege a tort claim based on negligent servicing of the mortgage.  *Id*. at *3-4.  Although the mortgage servicer, acting as the lender's agent, was not party to the agreement with the borrower, the borrower still could not allege a tort claim for the mortgage servicer's negligent failure to perform its contractual obligations because an agent or party to an agreement can "only incur tort liability while servicing a mortgage by causing personal injury or property damages as a result of the breach of the duty of reasonable care."  *Id*. at *3.  Mere economic injury does not give rise to such liability, and the borrower in that case only asserted economic damages.  *Id*.  Therefore, the *Blake* court concluded that "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing" and dismissed the negligent and wanton mortgage servicing claim because "no construction of the factual allegations [would] support the cause of action."  *Id*. at *3-4.

This court finds *Blake*'s construction of Alabama law accurate and its analysis persuasive.  After reviewing *Blake* and noting that Plaintiffs have failed to provide any caselaw supporting a cause of action for negligent and wanton mortgage servicing, the court similarly concludes that there is no cause of action for negligent or wanton mortgage servicing under Alabama law.  Accordingly,

Plaintiffs' claim for negligent, careless, and wanton mortgage servicing must be dismissed with prejudice.

Moreover, as in *Blake*, all duties in this action that Plaintiffs allege Defendants owed to them arise from the Mortgage Contract and, to the extent it exists, a contract modifying the initial loan agreement. Alabama law does not permit Plaintiffs to assert a tort claim against Defendants for their purported breach of a contract. *See Blake*, 2012 WL 607976, at *3. Further, Plaintiffs have only alleged economic loss from Defendants' alleged breach of the duty of reasonable care, and because a tort claim for a breach of this duty must cause personal injury or property damage, Plaintiffs have not alleged a plausible tort claim. *See Blake*, 2012 WL 607976, at *3.

### D.      Count Four: False and Fraudulent Representations

Finally, Plaintiffs allege that Defendants: (1) maintained a flawed loan modification system and intentionally ensured that their employees could not adequately perform their obligations because of their lack of training, experience, education, or skill; (2) routinely lost Plaintiffs' and other borrowers' necessary documents relating to their loan and modification applications; (3) routinely rejected borrowers' applications on false and incorrect grounds; (4) requested that borrowers and Plaintiffs submit (and re-submit) documents containing financial information that Defendants already possessed and refused to review a borrower's loan modification application until they received copies of this information; (5) provided false information regarding its processes and standards; (6) refused requests to put statements in writing; and (7) accepted modified mortgage payments while threatening to foreclose on their Loan, despite promising not to do so. (Doc. # 1-1 ¶ 18). Plaintiffs assert that Defendants "intentionally misrepresented and concealed material facts concerning the Plaintiffs' loan modification process," and that these misrepresentations caused them

18

substantial injury, such as late fees, unauthorized fees, and ultimately foreclosure.   (*Id.*)
Additionally, Plaintiffs echo their allegation that they were instructed to default on their Loan for
ninety days to be eligible for a loan modification.  (*Id.*)

In federal court, state claims for fraud must comply with the heightened pleading
requirements in Federal Rule of Civil Procedure 9(b).  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230,
1237 (11th Cir. 2008).  Rule 9(b) requires a party alleging claims for fraud or mistake to "state with
particularity the circumstances constituting fraud or mistake . . . ."  FED. R. CIV. P. 9(b).  A plaintiff
must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place,
and person responsible for the statement; (3) the content and manner in which these statements
misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud."  *Am. Dental Ass'n
v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citations omitted).  Further, "the plaintiff
must allege facts with respect to each defendant's participation in the fraud."  *Id*.

 Under Alabama law, "[m]isrepresentations of a material fact made willfully to deceive, or
recklessly without knowledge, and acted on by the opposite party, or if made by mistake and
innocently and acted on by the opposite party, constitute legal fraud."  Ala. Code § 6-5-101.   The
elements of a fraudulent misrepresentation claim under Alabama law are "(1) a false representation,
(2) concerning a material existing fact, (3) [reasonably] relied upon by the plaintiff (4) who was
damaged as a proximate result."  *Moore v. Prudential Residential Servs. Ltd. P'ship*, 849 So. 2d 914,
923 (Ala. 2002) (citations omitted).

Here, Plaintiffs have alleged general, conclusory allegations and failed to present facts
establishing a plausible fraudulent misrepresentation claim.  First, Plaintiffs have only identified one
false representation that Defendants have allegedly made: the allegation that Defendants told

Plaintiffs to default on their Loan for ninety days to be eligible for a loan modification. Plaintiffs have not alleged, as required in this Circuit, the "time, place, and person responsible for this statement," how this statement misled Plaintiffs, or what Defendants gained by this fraud. *See Am. Dental Ass'n*, 605 F.3d at 1291; FED. R. CIV. P. 9(b). Further, Plaintiffs have not alleged the particular Defendant that made this statement, which is another critical showing required for a fraud claim in federal court. *See Am. Dental Ass'n*, 605 F.3d at 1291. In short, Plaintiffs have not satisfied the heightened pleading standard required to assert a fraud claim in this court.

But even if Plaintiffs had satisfied the heightened pleading standard for fraud claims in federal court, the court concludes that Plaintiffs have not pled a plausible fraudulent misrepresentation claim under Alabama law. Plaintiffs state that Defendants misrepresented that Plaintiffs would be eligible for a modification if they were in default for ninety days. Plaintiffs have failed to allege, however, that they reasonably relied on this misrepresentation, and have provided no more than a conclusory allegation that they incurred injury because of this misrepresentation. *See Moore*, 849 So.2d at 923. Moreover, the pleadings are devoid of any plausible basis for Plaintiffs' fraudulent misrepresentation claim. *See Iqbal*, 129 S. Ct. at 1949. Accordingly, Plaintiffs' fraudulent misrepresentation claim is due to be dismissed.

To the extent Plaintiffs have attempted to plead fraudulent suppression in Count Four, Section 6-5-102 of the Alabama Code provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code. § 6-5-102. The elements of a fraudulent suppression claim are as follows: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the

20

defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury." *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010) (citations omitted).  "Silence on the part of the defendant regarding a material fact is not considered suppression unless the defendant has an obligation to communicate that fact." *Brushwitz v. Ezell*, 757 So. 2d 423, 431 (Ala. 2000).  To determine whether the circumstances of a case created a duty to disclose, courts consider several factors, such as: "the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 677 (Ala. 2001) (citations omitted).

To the extent Plaintiffs have also attempted to plead a fraudulent suppression claim, they have not pled sufficient factual content.  First, Plaintiffs have not alleged that Defendants had a duty to disclose certain facts to Plaintiffs.  Additionally, Plaintiffs have merely presented conclusory allegations that Defendants concealed material facts from Plaintiffs, which is not sufficient to survive a motion to dismiss.  Further, Plaintiffs have not alleged that Defendants' nondisclosure or concealment induced Plaintiffs to act and have failed to assert what harm they suffered.  Indeed, Plaintiffs have provided such a limited factual basis for this claim that the court cannot conclude that Plaintiffs have stated a plausible claim to relief.  *See Iqbal*, 129 S. Ct. at 1949.  What is more, Plaintiffs' failure to provide sufficient facts similarly fails to meet the heightened pleading requirements of Rule 9(b).  Accordingly, to the extent Plaintiffs have sought to plead a fraudulent suppression claim, this claim is due to be dismissed.[17]

---

[17] The court notes that in their Response, Plaintiffs allege what they should have alleged in their Complaint: a list of BANA's material omissions and the assertion that because Plaintiffs reasonably relied on these omissions, Plaintiffs suffered financial injury.  (Doc. # 20 at 15-16).  However, as discussed above (when evaluating Plaintiffs'

IV.     **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (Doc. # 12) is due to be granted and Plaintiffs' Complaint is due to be dismissed.  Plaintiffs' claim rooted in the notion that MERS' assignment of its interest was invalid (Count One) and claim asserting that Defendants negligently, carelessly, and wantonly serviced Plaintiffs' mortgage (Count Three) are due to be dismissed with prejudice.  Plaintiffs' breach of contract claim (Count Two) and fraud claim (Count Four) are due to be dismissed without prejudice.  The court will issue a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ____7th____ day of May, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

Breach of Contract claim in Count Two), the court is "limited to the four corners of [Plaintiffs'] complaint" and cannot consider claims raised by Plaintiffs for the first time in their Response.  *See supra* Part III.B; *Wilchombe*, 555 F.3d at 959.  Further, Plaintiffs repeat its insistence that BANA owed Plaintiffs a duty under the HAMP to provide loan modification services to Plaintiffs.  However, as discussed in the context of Plaintiffs' Breach of Contract claim, Plaintiffs have not provided any evidence to support its allegation that BANA owed Plaintiffs such a duty.  *See supra* Part III.B.